### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY S. MCINTURF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-CV-388-SAJ |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jeffery S. McInturf ("Plaintiff") appeals the decision of the Commissioner denying him Supplemental Security Income benefits under Title XVI of the Social Security Act.  Plaintiff asserts that the Administrative Law Judge ("ALJ") erred by (1) failing to find Plaintiff's headaches a severe impairment; (2) rejecting portions of the consultative examiner's opinion; (3) failing to properly assess Plaintiff's residual functional capacity ("RFC"); (4) failing to consider Plaintiff's obesity pursuant to Social Security Administration Ruling ("SSR") 02-01p; and (5) failing to properly assess Plaintiff's credibility.  For the reasons discussed below, the Court hereby affirms the decision of the Commissioner.

### 1.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on May 15, 1971, and was 35 years old at the time of the ALJ's denial decision in 2006.  (R. 22).   He has an eleventh-grade education and has not received a general equivalency diploma.  He has past relevant work experience as a

---

[1]  This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

roustabout and carpenter.  (R. 22, 71).  He alleges that he became unable to perform his past relevant work, or any other work, on a regular and continuing basis since August 3, 2001, due to back injury, left-eye problems, poor hearing in the left ear, and headaches. (R. 51).  Plaintiff suffered a head injury as a result of being hit on the head with a steel post while working as a roustabout.[2/]

Plaintiff filed his application for supplemental income benefits on November 2, 2004. (R. 64-65).  After he was denied benefits at the initial and reconsideration levels, he filed a timely Request for Hearing. (R. 37-43).  ALJ Lance McClain held the hearing on October 25, 2006 (R. 316-341) and issued an unfavorable decision on February 20, 2007. (R. 11-24).  Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on June 22, 2007. (R. 6-9).  Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

---

[2/]   Plaintiff previously received a lump sum Worker's Compensation award for the impairment that is the focus of this decision.  (R. 21, 59-62).   "[A] determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that [a person is] disabled or blind is not binding [on Social Security Disability cases]."  *See Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions on Disability By Other Governmental and Nongovernmental Agencies*, SSR 06-038, 2006 WL 2329939 at *6 (S.S.A. August 9, 2006)(quoting 20 C.F.R. §§ 404.1504, 416.904).

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.

---

[3/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750.

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.  This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the following impairments: obesity, back pain, visual disturbances in the left eye, hearing loss in the left ear, cognitive disorder, borderline mental retardation, and histrionic personality trait.  (R. 16).  However, the ALJ determined that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404. Subpt. P, App. 1. (R. 17).  The ALJ found that Plaintiff has the RFC to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; Plaintiff

---

[4/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

can stand and/or walk for at least 6 hours out of an 8-hour day; and Plaintiff can sit at least 6 hours out of an 8-hour workday.  The ALJ also found that Plaintiff should avoid hazards, such as heights and open machinery.  Plaintiff is also limited to simple work and has limited ability to interact with the public.  (*Id.*)  In so finding, he opined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (R. 18). He deemed Plaintiff unable to perform any past relevant work, but other jobs existed in significant numbers in the national economy that he could perform.  (R. 22-23).  Accordingly, he concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, from November 2, 2004 through the date of his decision, February 20, 2007. (*Id.*)

## 4.  REVIEW

### A.    Severity of Plaintiff's Headaches

Plaintiff argues that the ALJ incorrectly determined that Plaintiff's headaches were not severe.  The ALJ's determination in this regard occurred at Step Two of the sequential evaluation process.   At Step Two, the claimant must establish that a medically severe impairment or combination of impairments significantly limits his or her ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1521(b)).  Although the claimant need only a *de minimus* showing of an impairment at Step Two, he or she must show "more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  An impairment giving rise to disability benefits is one which "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Therefore, "[t]he Step Two severity determination is based on medical factors alone, . . ." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

Social Security Ruling ("SSR") 96-3p sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable impairments(s) and alleged symptoms(s), the Commissioner is to then consider the "intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. SSR 96-3p, *Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, 1996 WL 374181 (S.S.A. July 2, 1996).  "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (citation and internal quotations omitted).

The ALJ properly applied these regulations.  He noted that Plaintiff experienced cephalgia secondary to his accident, but he also found the record did not support the fact that the headaches were of such severity or duration to completely disable him. (R. 16). Plaintiff argues that he has received diagnoses of "headaches" from various doctors; specifically he cites the diagnosis of Dr. Jay Johnson, D.O., a board certified neurologist, as well as Dr. Dan Smith, Ph.D., and Dr. John Hickman, Ph.D., the consultative examiners.

However, when the ALJ reviewed the medical records, he found that, aside from the prescriptions for pain medication, none of the physicians opined that Plaintiff's headaches were so severe as to disable him, nor were there any objective medical findings equivalent to a severe impairment. (R. 16-21, 169, 172, 207, 229).

In *Bernal v. Bowen*, the plaintiff had been diagnosed with depression by his doctor, but nowhere in the doctor's report did it indicate that the plaintiff's depression was so severe as to render him unable to work.  *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).  The Court found the mere fact that the plaintiff had been diagnosed as suffering from depression did not automatically mean that he was disabled.  *Id.*

Plaintiff also argues that the ALJ did not make a specific determination of his credibility as to the headaches.  The ALJ did consider Plaintiff's subjective complaints regarding his headaches. (R. 18).  However, when the ALJ compared Plaintiff's complaints with the medical records, the ALJ determined that the record did not corroborate to the extent that Plaintiff claimed.  Specifically, the ALJ noted that the Plaintiff's treating physician, Dr. Rick Crenshaw, D.O., reported Plaintiff's statements that his headaches had improved. (R. 16, 169).  Therefore, the ALJ properly determined that Plaintiff's headaches were not so severe as to interfere with his ability to work.

**B.    Consultative Examiner's Opinion**

Plaintiff alleges that the ALJ erred by failing to apply the correct legal standard in evaluating the opinion of Dr. Hickman, the consultative examiner, who found that Plaintiff had a "marked" limitation to respond to changes in a work setting and a Global Assessment of Functioning ("GAF") score of 55.  The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning."

7

American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") (Text Revision 4th ed. 2000) at 32; *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006).  A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect," or "moderate difficulty in social or occupational functioning."  DSM-IV at 34.

Plaintiff faults the ALJ for stating that a GAF score of 55 is not "totally disabling" and that Plaintiff "has limitations but is not precluded from all work." (R. 22). The ALJ found that Plaintiff's GAF score of 55 indicated that Plaintiff had limitations but it was not consistent with the one "marked" limitation assessed by Dr. Hickman since "marked" is defined as "seriously affects ability to perform basic work functions." (R. 22).  The ALJ correctly concluded that Plaintiff has limitations, but is not precluded from all work.

Further, Dr. Hickman and Dr. Smith are Plaintiff's consultative examiners.  Dr. Crenshaw is the treating physician.  "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  Dr. Crenshaw has been Plaintiff's treating physician since 2001 and has never noted any permanent limitations that would affect Plaintiff's ability to work.  In a September 2001 follow up, Dr. Crenshaw noted, "Since [Plaintiff's] headaches have decreased in intensity and he's feeling better, I feel like he should be able to return to work in the immediate future." (R. 169).

Plaintiff also argues that the ALJ did not discuss the effect of his alleged serious limitations on his ability to work.  The ALJ did address this issue when he noted Dr. Hickman's examination results.  He found that, since Dr. Hickman opined in his medical

source statement that Plaintiff had "no" or "no significant" limitations in many areas and only "moderate" limitations in his ability to remember detailed instructions and in his ability to sustain concentration and persistence, Plaintiff was limited to simple work that should accommodate his cognitive disorder and borderline mental retardation. (R. 21-22, 304-06).

Finally, Plaintiff argues that the ALJ should have recontacted Dr. Hickman to clarify the medical source statement.  However, as the Commissioner points out, the regulations require the ALJ to contact a medical source for additional information only when the evidence from the medical source is inadequate for the ALJ to make a determination of whether the claimant is disabled.  20 C.F.R. § 416.921(e).  The record was adequate for consideration.  Thus, the ALJ was correct in concluding that Plaintiff did have limitations, but was not totally precluded from working.

**C.      Residual Functional Capacity**

The ALJ found that Plaintiff is limited to simple work and has limited ability to interact with the public. (R. 22).  Plaintiff argues that the ALJ did not give meaningful consideration to the reports of Dr. Smith and Dr. Hickman, nor did he give any rationale for discounting the limitations that the reports suggest.  The ALJ did give meaningful consideration to the reports by Dr. Smith and Dr. Hickman.  He found that Dr. Smith noted that Plaintiff had a moderate deficit in his short-term memory, but was able to recall five digits forward and four digit backwards and that his long-term memory was "intact" but shallow.  (R. 20, 238).  As the Commissioner points out, Dr. Smith did not opine that Plaintiff had any limitations resulting from his short-term deficit.[5]

_____

[5]      The Court notes that Dr. Burnard L. Pearce, Ph.D., opined in a Mental Residual Functional Capacity Assessment that Plaintiff could understand, remember and carry out simple

Further, as previously mentioned, the ALJ properly considered but discounted Dr. Hickman's opinion.  Consistent with Social Security Ruling (SSR) 96-8p, the ALJ discussed the medical evidence, symptoms, and opinions about Plaintiff's impairments and properly assessed and accommodated those impairments in his RFC determination. (R. 16-22). The determination of Plaintiff's RFC is an issue reserved to the Commissioner.  *See Castellano v. Sec'y of Health and Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994).

Plaintiff also faults the ALJ's conclusion that there were jobs existing in the national economy for a person with similar limitations.   Specifically, Plaintiff argues that the hypothetical question to the vocational expert included no nonexertional limitations except that the individual was blind in one eye.  (R. 336-337).  However, in the ALJ's decision he did consider Plaintiff's nonexertional limitations and discussed them in his decision.  He noted Plaintiff's "marked" limitation and concluded that limiting Plaintiff to simple work should accommodate his cognitive disorder and borderline mental retardation.  Also, he found that Plaintiff's histrionic traits would limit his ability to interact with the public.  The ALJ noted that, given Plaintiff's exertional limitations, Plaintiff should avoid working around hazards, such as heights and open machinery. (R. 22).  Further, the ALJ noted that when Dr. Richard Hastings, D.O., examined Plaintiff, the doctor recommended that Plaintiff undergo a course of vocational rehabilitation in order to learn a more sedentary type of employment. (R. 21, 253).   Therefore, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

---

and some, but not all, detailed instructions under routine supervision. (R. 286).

10

**D.    Obesity**

Plaintiff argues that, even though the ALJ did find that Plaintiff has a severe impairment of obesity, he failed to apply the requirements as required by SSR 02-1p, *Evaluation of Obesity*, 2000 WL 628049 (S.S.A. Sept. 12, 2002).  The agency ruling requires an assessment of "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." (*Id.* at *6.)  In particular, the ALJ is required to explain how he reached his conclusion on "whether obesity caused any physical or mental limitations," and to "consider any functional limitations resulting from the obesity" in his Residual Functional Capacity ("RFC") assessment.  (*Id.* at *7.)

In reaching his conclusion that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings, the ALJ stated that he had evaluated Plaintiff's obesity but that there was no specific listing set out for obesity. (R. 17).  He further concluded that none of Plaintiff's doctors indicated that his back pain or obesity would keep him from performing a standing job or a job requiring him to remain seated. (R. 22).  Plaintiff's argument that the ALJ failed to properly analyze Plaintiff's obesity is not well-founded.  The Court finds no error in the ALJ's analysis of Plaintiff's obesity.

**E.    Credibility**

Plaintiff also asserts that the ALJ did not properly evaluate his subjective allegations concerning his impairments.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial

evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). Some of the factors relevant to an assessment of credibility include attempts to find relief, use of medication, willingness to try any treatment prescribed, the use of crutches or a cane, regular contact with doctors, and the claimant's daily activities. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987); *see Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 (S.S.A.).

Plaintiff argues that, in making his credibility determination, the ALJ based his decision on Plaintiff's "weak" work record, and his history of alcohol abuse. (R.18). Specifically, Plaintiff argues that with regard to his work record, the ALJ did not weigh the effect of his borderline I.Q. However, as the Commissioner points out, Plaintiff received this diagnosis in September 2006 and has not shown that it prevented him from working in the past. (R. 21). *See Gowell v. Apfel*, 242 f.3d 793, 798 (8th Cir. 2001) (claimant worked for years with her impairments.) In addition to Plaintiff's work record, the ALJ noted how Plaintiff's history of alcohol abuse indicated that Plaintiff was not motivated to work. As the Commissioner points out, lack of motivation to work is a relevant consideration in a disability determination. *Rebeck v. Barnhart*, 317 F.2d 1263, 1274 (10th Cir. 2004).

Plaintiff also argues that the ALJ failed to consider the objective medical evidence that he did have hearing and vision loss.  To the contrary, the ALJ did find that because of Plaintiff's hearing and vision loss, he should avoid working around hazards because his vision and hearing impairment might prevent him from being aware of such hazards.  (R. 22).  The ALJ considered all the relevant medical evidence as well as Plaintiff's testimony before he found that his "medically determinable impairments could reasonable be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 18).  In addition to Plaintiff's weak work record and alcohol abuse, the ALJ pointed to several inconsistencies to his credibility.

First, the ALJ noted that, when Dr. Bryant Boyd, M.D., performed an internal medicine consultation, Plaintiff reported that he could not hear the tuning fork when it was held close to his left ear. (R. 19, 228-229).  However, he did hear the doctor when the doctor was standing behind him and speaking in an almost whisper. (R. 17).  Dr. Boyd also noted that, even though Plaintiff reported that his vision caused him to be unable to work and see, Plaintiff was still able to drive a car and "apparently sees well enough to do this." (*Id.*)  Further, the ALJ noted Dr. Boyd's conclusion that Plaintiff's complaint of difficulty with his left visual field was inconsistent with any left brain injury and did not fit the history of his injury and its location.  Dr. Boyd also opined that Plaintiff's complaints of left hearing loss were inconsistent with findings on physical examination. (R. 229).

Second, when Dr. Smith examined Plaintiff, he noted that Plaintiff seemed "quite invested in listing and emphasizing his symptoms." (R. 20, 236).  Plaintiff also complained

of pain in his left hip, back, and headaches.  However, Dr. Smith found that Plaintiff rose, walked, and sat without apparent difficulty or pain.  (R. 20, 235, 237).

Third, when Dr. Hickman administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), Plaintiff obtained a severely elevated 2-1-3-8-4-6 profile. (R. 20, 299, 301).  Individuals with a 2-1 profile presents themselves as concerned with their physical functioning, and even when or if they have real physical symptoms, they exaggerate the severity and refuse to acknowledge that their symptoms are related to emotional conflict.  They think in a very concrete manner and tend to focus extensively on their physical symptoms.  (R. 20, 301).

The ALJ appropriately explained his reasons for finding Plaintiff not entirely credible. The Court finds no error in the ALJ's credibility analysis.

### 5.  CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits shows that the correct legal principles have been followed and is supported by substantial evidence.  Accordingly, the Court affirms the Commissioner's decision.

It is so ordered this 14th day of July, 2008.

Sam A. Joyner
United States Magistrate Judge